# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE MEDICAL PROTECTIVE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANNE M. FABRICIUS, DMD, FACP, and ) <br> LAWRENCE P. SMITH, DDS, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> LAWRENCE P. SMITH, DDS, ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE MEDICAL PROTECTIVE COMPANY, ) <br> ) <br> Counter-Defendant. ) <br> ) | Case No. 15 cv 6917 <br><br> Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Defendant Lawrence P. Smith, DDS, filed a counterclaim against plaintiff The Medical Protective Company ("MedPro"), alleging that MedPro had a duty to defend Smith in *Oak Park Prosthodontics, Ltd. v. Lawrence P. Smith, DDS, et al.*, No. 14 CH 12594, ("the Fabricius lawsuit") pending in the Circuit Court of Cook County, Chancery Division. MedPro moves for summary judgment in its favor and against Smith [34] on the counterclaim. For the reasons stated herein, this Court grants the motion.

**Background**

The following facts are undisputed for purposes of this motion. MedPro is an Indiana corporation with its principal place of business in Fort Wayne, Indiana. Smith is a citizen of Illinois

1

and a resident of DuPage County. Anne M. Fabricius is a citizen of Illinois and a resident of Cook County. Dr. Fabricius is one of the plaintiffs in the underlying Fabricius lawsuit. MedPro issued professional liability insurance policies for Smith in his dental practice.

*A. The Insurance Policies*

Policy No. 561451 covers January 14, 2010, through January 14, 2011 (the "2010-2011 policy"). This policy was renewed annually in 2011-2012, 2012-2013, 2013-2014. Each of the policies issued to Dr. Smith contains the following provision: "[T]he Company hereby agrees to defend and pay damages, in the name and on behalf of the Insured… [i]n any *claim* based upon *professional services* rendered, or which should have been rendered, during the term of this policy by the Insured… in the practice of the Insured's profession…". (Emphasis added). The policies define "claim" as "an express written demand for money as compensation for civil damages." Each policy defines the term "professional services" as "the rendering of… dental … services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider…".

Each of the policies contains a business enterprise exclusion, which applies to: "any liability arising from the activity of an Insured… as a proprietor, shareholder, officer, administrator, committee member, director, or medical director of any professional or business enterprise, unless the liability arises from the Insured's provision of treatment to a patient." Each of the policies also contains the following exclusion for "payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act."

Each of the policies contains a Dental Expanded Coverage Endorsement, which states as follows:

2

            Disciplinary and Licensure Coverage
       The Company's obligation to defend "any claim for damages" as provided
for in the Policy is clarified to include the defense of any disciplinary, licensure or
similar administrative proceeding brought against an Insured, subject to the
following restrictions:
       1. The proceeding must arise from the rendering or failure to render
professional services to a patient which would otherwise be covered under the
policy.
       2. Either:
       a. the proceeding must be filed during the Company's defense of the Insured
in a claim for damages arising from the same acts or omissions as such claim; or
       b. the Company must determine a claim for damages is likely to be made
against the Insured as a result of the same act or omission.

*B. The Underlying Lawsuit*

Dr. Fabricius purchased Smith's dental practice. Dr. Anne Fabricius filed her lawsuit against Smith on August 1, 2014, and amended the complaint on June 8, 2015, seeking rescission of the purchase agreement and monetary damages. The operative complaint in the Fabricius lawsuit contains four counts. Count I alleged that Smith: (a) fabricated, and knowingly, and fraudulently used, dental procedure codes to make his dental practice appear more like a high end, specialty practice; (b) performed unnecessary dental procedures on patients; and (c) concealed that his practice included a managed care contract. Count I further alleged that this misuse of dental practice codes allowed Smith to inflate the value of his practice; in turn, Smith intended that Dr. Fabricius rely on this information about the financial well-being of the practice in making her decision to buy his practice. Dr. Fabricius also alleged that had she known about the miscoding or the true amount of prosthodontics work done by Smith, she would not have purchased the practice or entered into a lease with Smith's wife for the dental office. Count I sought rescission of the agreement to purchase the practice and the office lease and "such other relief as this Court deems appropriate."

Count II of the Fabricius lawsuit alleges that Dr. Fabricius overpaid for Smith's practice due to the inflated revenues caused by Smith's fraudulent coding, performance of unnecessary dental procedures on patients, and concealment of his practice's managed care contract. Count II seeks

actual damages based on the inflated purchase price of the dental practice, "exemplary damages, and such other or further relief as this Court deems appropriate."

Count III alleges breach of contract based on Smith's breach of his obligations under the Restrictive Covenant Agreement and under the Employment Agreement by soliciting patients from Dr. Fabricius' practice and by downloading patient files onto an external hard drive. Smith also allegedly breached the Purchase Agreement by fraudulently using dental codes to generate inflated revenue and otherwise bill for medically unnecessary treatment of patients. Fabricius seeks actual damages in the form of money damages for Smith's breaches of his contractual obligations.

Count IV of the Fabricius lawsuit seeks a declaratory judgment that Smith was terminated for cause under the subject Restrictive Covenant Agreement and Employment Agreement.

Fabricius called MedPro on December 12, 2014, to notify it of the Illinois Department of Financial & Professional Regulation ("IDFPR") complaint she filed alleging that Smith had performed unnecessary dental work and improperly billed and over-billed patients for procedures. Fabricius had submitted the complaint on October 1, 2104, to IDFPR. On June 4, 2015, Carol Daggy of Southpoint Insurance Agency, Smith's insurance broker, reported the Fabricius lawsuit to MedPro; almost nine months after Smith answered the complaint.[1] On August 6, 2015, MedPro disclaimed any duty to defend or indemnify Smith in the Fabricius lawsuit.

In March 2015, Smith's former patients requested that the IDFPR open an investigation of Smith's practice. On April 9, 2015, Ms. Daggy reported the IDFPR proceedings against Smith to MedPro. On April 13, 2015, MedPro acknowledged receipt of the IDFPR proceedings and retained counsel to defend Smith in connection with those proceedings. MedPro never determined that the complaints made by Smith's patients to the IDFPR were likely to ripen into a claim for civil damages

---

[1] Smith states in his responses to MedPro's Rule 56.1 statements of fact that this fact is contested, but he fails to properly cite to evidence in the record disputing this fact.

4

by Dr. Fabricius against Smith to fulfill Condition 2 of the Disciplinary and Licensure Coverage provision.

MedPro's Dental Malpractice 101 document contains a section titled, "What Types of Things Lead to Malpractice Claims?" that includes "unnecessary" root canals and "unnecessary" extraction of teeth as examples of situations that have led to large malpractice claims. Whether a dental procedure is unnecessary is a matter of professional judgment of a dentist. Each of the MedPro polices contain the following reporting requirement: "The insured shall notify the Company at its General Offices, Fort Wayne, Indiana, or its agent, as soon as possible of any threatened claim, with full information relative to the services rendered." Smith has been insured by MedPro through a Southpoint Agency broker, Jim Carney, for 32 years.

Smith testified that he told Carney about the Fabricius lawsuit and expected that Carney would "submit it to MedPro and see if there is anything that could be done." Smith also testified that it was his understanding that he had to seek coverage from MedPro through Carney. In his affidavit, Carney stated that Smith first informed him of the Fabricius lawsuit on May 28, 2015.

**Legal Standard**

Summary judgment is proper when "the admissible evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017), *reh'g denied* (Mar. 27, 2017) (quoting *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)); Fed. R. Civ. P. 56(a). In deciding whether summary judgment is appropriate, this Court accepts the nonmoving party's evidence as true and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**Discussion**

MedPro argues that it does not owe Smith professional liability insurance coverage in connection with the lawsuit filed by Dr. Anne Fabricius, styled *Oak Park Prosthodontics, Ltd. v. Lawrence P. Smith, DDS, et al.*, No. 14 CH 12594, in the Circuit Court of Cook County, Chancery Division. MedPro asserts that it has no duty to defend or indemnify Smith under the policies because the Fabricius lawsuit is not a "claim" based on "professional services" rendered "in the practice of the Insured's profession" as those terms are defined in the policies. MedPro further argues that Smith's counterclaim, alleging that MedPro is estopped from raising coverage defenses, is false as a matter of law. This Court first turns to the scope of the policies.

*I. The Scope of the Policies*

MedPro must provide its insured, Smith, with a defense when "the allegations in the [underlying] complaint are even potentially within the scope of the policy's coverage." *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.,* 567 F.3d 871, 874 (7th Cir. 2009) (citing *Guillen v. Potomac Ins. Co. of Ill.,* 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1, 7 (2003)). When evaluating whether an insurance company has a duty to defend in a particular instance, the court "should not simply look to the particular legal theories pursued by the claimant, but must focus on the allegedly tortious conduct on which the lawsuit is based." *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir. 1995). The court examines the underlying factual allegations only to the extent that they inform the theory of recovery to avoid a situation where the duty to defend depends on draftsmanship of the underlying complaint. *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 613 (7th Cir. 2010) (citing *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.,* 312 Ill.App.3d 998, 245 Ill.Dec. 598, 728 N.E.2d 680, 688 (2000)). "The duty to defend is not triggered by 'a free-standing reference to a fact ... not attached to any particular theory of recovery....'" *Prof'l Sol. Ins. Co. v. Giolas*, No. 16 C 9868, 2017 WL 5196652, at *3 (N.D. Ill. Nov. 8, 2017) (Leinenweber, J.) (quoting *Westfield Ins. Co. v.*

*W. Van Buren, LLC*, 406 Ill.Dec. 99, 59 N.E.3d 877, 885 (Ill. App. Ct. 2016)); *see also, Ill. Emcasco Ins. Co. v. Northwestern Nat'l Cas. Co.*, 337 Ill.App.3d 356, 271 Ill.Dec. 711, 785 N.E.2d 905, 908 (2003) (noting that a duty to defend arises "if the insurance covers the liability on any set of facts consistent with the allegations needed to support recovery on any theory raised in the complaint").

As set forth above, the policies at issue require MedPro to defend "any *claim* based upon *professional services* rendered, or which should have been rendered, during the term of this policy by the Insured… in the practice of the Insured's profession…". Thus, the question is whether the underlying Fabricius lawsuit is a "claim" based on "professional services" rendered "in the practice of [Smith's] profession." A claim is "an express written demand for money as compensation for civil damages." Even assuming that the Fabricius complaint is a written demand for money and therefore a claim, it is not based on "professional services." Each policy defines the term "professional services" as "the rendering of… dental … services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider…".

The underlying complaint in the Fabricius lawsuit for which Smith asserts MedPro owes him a duty to defend under the relevant policies is a contract dispute arising from the sale of Smith's dental practice. The Fabricius Complaint alleges that "the plaintiff purchaser [Fabricius] relied on false and fraudulent patient profiles, inflated financials, and skewed analysis of the dental practice when she made the decision to purchase the dental practice of Dr. Lawrence P. Smith ("Dr. Smith")…." Complaint, Ex. Ga, Dkt. 1-7. In Count I for rescission, she alleges that Smith fabricated dental procedure codes to "make the practice look more like a high end, specialty practice." *Id.* at ¶ 16. She further alleges that: "By means of using these Dental Practice Codes indicating complex restorative and surgical procedures, for years Dr. Smith generated fees well in excess of what the actual, routine procedures he actually performed would have merited. Not only was the use of

7

inappropriate codes a fraud on the insurance companies, but by listing these Dental Practice Codes on the Practice Profiles, Dr. Smith skewed the basis of his practice toward prosthodontics and, therefore, made the practice look more appealing to a specialist such as Dr. Fabricius." *Id.* at ¶ 19. Fabricius asserts that she would not have purchased the practice had Smith's records accurately reflected his dental practice. *Id.* at ¶ 23. Count II for fraud similarly alleges that Smith inflated the revenue from his dental practice through fraud. She alleges that: "Dr. Smith knew that the revenue of his practice was inflated by the use of dental codes for more complex procedures which were routinely utilized… [and] by performing treatments which were not medically necessary, and by billing separately for treatments which should have been included in the comprehensive codes he used… he knew he was misrepresenting the practice to her for the purposes of inducing her to buy the dental practice at an inflated price." *Id.* at ¶ 30. In Count III, Fabricius alleges breach of contract for Smith's alleged theft of patient records and subsequent solicitation of patients and breach of warranty for the fraudulent coding and inflated revenue from "upcoding" and billing for unnecessary procedures.

Smith asserts that MedPro was required under the policies to provide a defense for the IDFPR claims and, because the Fabricius lawsuit is inextricably linked to the IDFPR claims, that MedPro is required to also cover the Fabricius lawsuit. The IDFPR investigation and complaint arose from Smith's patients claiming unnecessary treatment and billing, and Dr. Fabricius notifying IDFPR of the same. Her separate complaint in the Circuit Court of Cook County is based on fraud and breach of contract arose from Smith inflating the value and misrepresenting the financials of his dental practice to induce Dr. Fabricius to buy it and pay a premium for it. He inflated the value of his practice by charging for unnecessary procedures and coding procedures as if they were more complex.

The situation here is similar to the situation in *Health Care Industry Liability Ins. Program v. Momence Nursing Center, Inc.*, 566 F3d 689 (7th Cir. 2009), in which the Seventh Circuit affirmed summary judgment in favor of the insurer after finding no duty to defend. In that case, the defendant nursing center argued that the insurer had a duty to defend because the claims in the underlying complaint against it potentially fell within the policies. *Id.* at 691. The underlying complaint was brought under the False Claims Act and the Illinois Whistleblowers' statute and alleged that the nursing center submitted thousands of false charges to Medicare and Medicaid and also failed to meet the standard of care. *Id.* The policies at issue obligated the insurer to "defend any suit seeking damages 'because of' an 'injury' that is 'caused by a medical incident' arising out of the providing or withholding of various professional services, including medical or nursing treatment." *Id.* at 694. The nursing center argued that there would not have been any lost services or false claims without the allegedly inadequate care resulting in bodily injury and therefore the claims against them should trigger the duty to defend. *Id.* The Seventh Circuit disagreed, reasoning that,

> The statutory damages they seek result from those allegedly false filings, and *not* from any alleged bodily injury to the residents. Although the allegations in the underlying complaint detailing the injuries suffered by Momence residents put a human touch on the otherwise administrative act of false billing, they need not be proven by the plaintiffs to prevail. Under the FCA and the IWRPA, the plaintiffs do not have to show that any damages resulted from the shoddy care.

*Id.* at 694-5.

Here, Fabricius' rescission, fraud, and breach of contract claims do not have to show that any damages resulted from injuries to Smith's patients. Under Illinois law, a claim for breach of contract requires, "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 14, 61 N.E.3d 1155, 1159, *appeal denied sub nom. Burkhart v. Wolf Motors of Naperville, Inc.*, 77 N.E.3d 81 (Ill. 2017). A claim for fraud or misrepresentation requires, (1) the existence of a false statement of material fact;

9

(2) by one who knows or believes the statement to be false; (3) made with the intent to induce action by another in reliance on the statement; (4) action by the other in reliance on the truthfulness of the statement; and (5) an injury to the other due to the reliance. *Benson v. Stafford,* 407 Ill.App.3d 902, 921, 346 Ill.Dec. 828, 941 N.E.2d 386 (2010). As part of the fraud claim, a plaintiff must show its reliance on the misrepresentation was justified. *Id.* Rescission similarly requires a showing that some fraud in making the contract, such as concealment or misrepresentation of a material fact, causes the other party to rely on that fraud in making the contract. *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 165, 821 N.E.2d 706, 713 (2004). None of these theories of liability in the context of Dr. Fabricius' claim depend on injuries to Smith's patients or him even having actually performed unnecessary procedures. As in *Health Care Industry Liability Ins. Program*, the unnecessary treatments put a human gloss on the false billing and upcoding of services by Smith. Ultimately, Fabricius' claims are not dependent on showing that damages resulted from unnecessary dental procedures. The alleged injury and damages arise from Fabricius' overpayment for the practice. Accordingly, this Court finds that MedPro has no duty to defend Smith against the Fabricius lawsuit.

*II. Estoppel and Waiver*

Smith argues that MedPro is estopped from raising any coverage defenses because it delayed eleven months before filing the instant declaratory judgment action. Once the insurer has notice of a potentially covered claim, it has two options: (1) defend the suit under a reservation of rights, or (2) seek a timely declaratory judgment that there is no coverage. *N. Ins. Co. of New York v. City of Chicago*, 325 Ill. App. 3d 1086, 1094, 759 N.E.2d 144, 151 (2001). "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses, including that of late notice." *Employers Reinsurance Corp. v. E. Miller Ins. Agency, Inc.*, 332 Ill. App. 3d 326, 340, 773 N.E.2d 707, 718 (2002). However, the estoppel doctrine applies only

when an insurer has breached its duty to defend. *Employers Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill. 2d 127, 151, 237 Ill.Dec. 82, 708 N.E.2d 1122 (1999). Where, as here, the insurer had no duty to defend, estoppel cannot be applied against the insurer. *See id.* This Court has already found that MedPro does not have a duty to defend on the Fabricius lawsuit and therefore it would be entitled to assert policy defenses such as late notice and the business exclusion provision.

Smith also argues that MedPro waived its coverage defenses by defending Smith in the IDFPR proceedings. "[A]n insurer waives its right to enforce a provision of the contract when its words or conduct are inconsistent with its intention to rely on the requirements of the policy. For a court to find waiver of a policy defense requires the establishment of those facts that would show that it would be unjust, inequitable, or unconscionable to allow the insurer to assert the defense." *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 170, 821 N.E.2d 706, 717 (2004) (internal citations omitted). Smith has presented no such evidence.

Accordingly, MedPro has not waived policy defenses such as the business enterprise exclusion, which would also preclude coverage for these claims. That provision excludes coverage for liability arising from Smith's activities as the proprietor or director of his dental practice, *unless* the liability arises from his treatment of a patient. As explained above, liability for breach of contract and fraud does not arise from treatment of his patients.

**Conclusion**

Based on the foregoing, this Court grants MedPro's motion for summary judgment on Smith's counterclaim.

IT IS SO ORDERED.

Date: 6/4/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge